NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SANDVIK, INC. and THERMO FISHER SCIENTIFIC INC., | Civil Action No. 13-4667 (SDW) (MCA) |
| Plaintiffs, | |
| | **OPINION** |
| v. | |
| HAMPSHIRE PARTNERS FUND VI, L.P. and 18-01 POLLITT DRIVE LLC, | April 4, 2014 |
| Defendants. | |

**WIGENTON**, District Judge.

Before the Court is Defendant Hampshire Partners Fund VI, LP ("Hampshire") and 18-01 Pollitt Drive LLC's ("18-01 Pollitt") (collectively "Defendants") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 9613(b). Venue is proper under 28 U.S.C. § 1391. This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, Defendants' Motion to Dismiss is **GRANTED**, **in part**, with respect to Thermo Fisher Scientific Inc.'s ("Thermo Fisher") Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") § 107(a) claim, Sandvik, Inc. ("Sandvik") and Thermo Fisher's (collectively "Plaintiffs") CERCLA § 113(f)(1) claims, Plaintiffs' CERCLA § 113(f)(3)(B) claims, and Plaintiffs' cost recovery claims under the New Jersey Spill Compensation and Control Act ("Spill Act"). Further, Defendants' Motion is **DENIED**, **in part**, with respect to Sandvik's §

1

107(a) claim, Sandvik's declaratory judgment claim relating to § 107(a), and Plaintiffs' Spill Act contribution claim.

**FACTUAL HISTORY**

*Parties*

Sandvik is the owner and operator of a property located at 1702 Nevins Road, Fair Lawn, New Jersey. (Compl. ¶ 9.) Thermo Fisher is the owner and operator of a property located at 1901 Nevins Road, Fair Lawn, New Jersey. (Id. ¶ 10.) Plaintiffs are registered as Delaware corporations. (Id. ¶¶ 1-2.)

18-01 Pollitt owns the property located at 18-01 Pollitt Drive, Fair Lawn, New Jersey, and Hampshire is the operator of the property. (Id. ¶¶ 7-8.) 18-01 Pollitt acquired title to the property on May 11, 2006. (Id. ¶ 7). Hampshire is registered as a Delaware limited partnership. (Id. ¶ 3.) 18-01 Pollitt is registered as a New Jersey limited liability company. (Id. ¶ 4.)

*Factual Allegations*

In or around 1978, the Borough of Fair Lawn, New Jersey discovered that two of its non-potable industrial wells were contaminated with volatile organic compounds ("VOCs") including trichloroethylene ("TCE"), tetrachloroethylene ("PCE") and 1,2-dichloroethylene ("1,2-DCE"). (Id. ¶ 11.) Subsequent sampling revealed that potable production wells in Westmoreland Well Field—a part of the Borough of Fair Lawn—were also contaminated with VOCs. (Id.) On September 8, 1983, the Environmental Protection Agency ("EPA") listed the Fair Lawn Site—which included Westmoreland Well Field and surrounding contaminated areas—on the National Priorities List.[1] (Id. ¶¶ 12-13.)

---

[1] "The National Priorities List (NPL) is the list of national priorities among the known releases or threatened releases of hazardous substances, pollutants, or contaminants throughout the United States and its territories. The NPL is intended primarily to guide the EPA in determining which sites warrant further investigation." United States Environmental Protection Agency, National Priorities List, available at http://www.epa.gov/superfund/sites/npl/.

2

In 2006, Sandvik closed its manufacturing operations at the property located at 1702 Nevins Road. (Id. ¶¶ 9, 21.) Sandvik's closure of its operations triggered the requirements of the New Jersey Industrial Site Recovery Act ("ISRA") which mandated Sandvik to investigate the groundwater under its property. (Id. ¶¶ 22-23.) Based on its investigation, Sandvik discovered that hazardous material—including PCE, TCE and 1,2-DCE—was present in the groundwater. (Id. ¶ 24.) Sandvik alleges that the VOCs migrated from 18-01 Pollitt Drive— which is located within the Fair Lawn Site—to its property. (Id.) Pursuant to ISRA, the New Jersey Department of Environmental Protection ("NJDEP") required Sandvik to treat the groundwater, including the groundwater that had migrated from Defendants' property, and to mitigate PCE vapors that infiltrated its buildings. (Id. ¶¶ 25-26.)

On March 25, 2008, Plaintiffs and the EPA entered into an Administrative Settlement Agreement and Consent Order for Remedial Investigation/Feasibility Study ("Consent Order"), which allegedly constituted an administrative settlement for purposes of CERCLA Section 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B). (Id. ¶¶ 14, 19.) The Consent Order required Plaintiffs to conduct a "Remedial Investigation and Feasibility Study." (Id. ¶ 15.) Defendants were not parties to the Consent Order. (Id. ¶ 16.)

In or around 2008, Defendants investigated the soil at the 18-01 Pollitt Drive property and discovered VOCs in the soil—specifically, PCE, TCE and 1,2-DCE. (Id. ¶ 28.) On August 15, 2008, Defendants provided Plaintiffs with samples from their investigation which revealed hazardous materials in the soil and groundwater. (Id. ¶ 30.) Plaintiffs allege that the hazardous substances had migrated from Defendants' property to both of Plaintiffs' properties and other Fair Lawn locations. (Id. ¶ 33.) Plaintiffs further allege that they have incurred response costs— and will continue to incur costs—for undertaking actions relating to the hazardous materials that

have migrated from Defendants' property.  (Id. ¶¶ 34-35.)  On August 1, 2011, the parties executed a two-year tolling agreement.  (Thermo Fisher Br. 7.)

**PROCEDURAL HISTORY**

Plaintiffs commenced the instant action on August 2, 2013.  Plaintiffs allege the following Counts: (1) CERCLA cost recovery; (2) CERCLA contribution; (3) declaratory relief under CERCLA; (4) cost recovery under the Spill Act;[2] and (5) contribution under the Spill Act.  On September 27, 2013, Defendants moved to dismiss the Complaint.

**LEGAL STANDARD**

The adequacy of pleadings is governed by Fed. R. Civ. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief."  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief").

In considering a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  Phillips, 515 F.3d at 231 (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

---

[2] Sandvik agreed to dismiss Count IV of the Complaint.  (Sandvik Br. 4 n.1.)

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[ ] that the pleader is entitled to relief" as required by Rule 8(a)(2). Id. at 679.

According to the Supreme Court in Twombly, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his[/her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (internal citations omitted). The Third Circuit summarized the Twombly pleading standard as follows: "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

In Fowler v. UPMC Shadyside, the Third Circuit directed district courts to conduct a two-part analysis. 578 F.3d 203, 210 (3d Cir. 2009). First, the court must separate the factual elements from the legal conclusions. See id. The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Id. at 210-11. Second, the court must determine if "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoting Iqbal, 566 U.S. at 679). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id. (citing Phillips, 515 F.3d at 234-35.)

**DISCUSSION**

"CERCLA provides two mechanisms that allow potentially responsible parties ("PRPs") to recover costs they have expended to decontaminate a polluted site: § 107(a) cost recovery

5

claims and § 113(f) contribution claims." Agere Sys., Inc. v. Advanced Envtl. Tech. Corp., 602 F.3d 204, 216 (3d Cir. 2010). Under CERCLA § 107(a)(4), PRPs are liable for, among other things: "(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan; [and] (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4). "Section 107(a) [ ] allows private parties to bring cost recovery suits against other PRPs, and courts have developed several principles for application in such suits." Agere, 602 F.3d at 216-17 (internal footnote omitted).

Section 113(f) "provides two avenues of relief" for contribution—§§ 113(f)(1) and 113(f)(3)(B). Id. at 217. Pursuant to CERCLA § 113(f)(1), "[a]ny person may seek contribution from any other person who is liable or potentially liable under section [107(a)] of this title, during or following any civil action under section [§§ 106 or 107(a)] of this title." 42 U.S.C. § 9613(f)(1). Under CERCLA § 113(f)(3)(B), "PRPs who resolve their liability to the United States or an individual State through an administratively or judicially approved settlement can seek contribution from another PRP." Agere, 602 F.3d at 217 (citing 42 U.S.C. § 9613(f)(3)(B)).

**I.   CERCLA § 107(a)**

   **A. Thermo Fisher**

The parties agree that Thermo Fisher does not have a viable "cost recovery" claim under CERCLA § 107(a). (Thermo Fisher Br. 2, n.1.)  Thus, Thermo Fisher's § 107(a) claim is dismissed.

### B. Sandvik

As it relates to Sandvik, there are two types of response costs at issue: (1) Sandvik's costs incurred pursuant to the Consent Order; and (2) Sandvik's costs incurred not pursuant to the Consent Order. (Sandvik Br. 10; Compl. ¶¶ 23-26.)

Defendants initially argued that Sandvik cannot maintain any claim for cost recovery under CERCLA § 107(a). (Defs. Br. 6.) However, in their reply brief, Defendants concede that "Sandvik has sufficiently pled a claim for cost recovery under CERCLA § 107(a) for costs independently incurred pursuant only to ISRA." (Defs. Reply 3-4.) Thus, the only response costs to be examined are those Sandvik incurred pursuant to the Consent Order.

Relying on Agere, Defendants argue that parties "who if permitted to bring a § 107(a) claim would be shielded from contribution counterclaims under § 113(f)(2), do not have any § 107(a) claims for costs incurred pursuant to consent decrees in a CERCLA suit." 602 F.3d at 229. Defendants contend that the EPA and DEP identified that Plaintiffs' properties contributed to the groundwater contamination, and pursuant to the Consent Order, Plaintiffs resolved some liability and will not be liable for contribution claims. (Defs. Br. 7-8.)

Sandvik avers that Agere does not apply here because Agere involved the resolution of a party's liability by entering into a consent decree after a lawsuit was filed. (Sandvik Br. 9-10.) Sandvik argues that Defendants' argument would require extending Agere to apply to response costs incurred "after having entered into the administrative Consent Order, in the absence of any lawsuit." (Id. at 10.)

This Court finds that Sandvik does not have a § 107(a) claim for response costs incurred pursuant to the Consent Order. The reasoning in Agere is persuasive here. In Agere, the Third Circuit noted that "a district court is not supposed to fashion an award that allows a plaintiff to

7

recover from a defendant costs associated with the cleanup of waste that the plaintiff itself has contributed to the site." 602 F.3d at 229. Furthermore, "while joint and several liability allows a plaintiff to collect from a single defendant the collective liability of all defendants, it does not permit a plaintiff to recover from a defendant the costs to undo what the plaintiff itself has done." Id. Here, the EPA and NJDEP ascertained that Plaintiffs' properties contributed to the contamination of the Fair Lawn Site. Under Agere, Plaintiffs "who if permitted to bring a § 107(a) claim would be shielded from contribution counterclaims under § 113(f)(2), do not have any § 107(a) claims for costs incurred pursuant to consent decrees in a CERCLA suit." Id. Thus, Plaintiffs do not have a cost recovery claim under § 107(a) for response costs incurred pursuant to the Consent Order.

Accordingly, Sandvik's § 107(a) claim relating to costs incurred pursuant to the Consent Order is dismissed. Sandvik's § 107(a) claim for costs independently incurred outside the scope of the Consent Order survives the instant motion to dismiss.

**II. CERCLA § 113(f)(1)**

CERCLA § 113(f)(1) allows a party to seek contribution from another party who is liable or potentially liable under § 107(a) during or following specified civil action. 42 U.S.C. § 9613(f)(1). In Cooper Industries, Inc. v. Aviall Services, Inc., the Supreme Court held that "a private party who has not been sued under § 106 or § 107(a) may [not] obtain contribution under § 113(f)(1) from other liable parties." 543 U.S. 157, 160-61 (2004); see United States v. Atl. Research Corp., 551 U.S. 128, 133 (2007) (reiterating the holding in Cooper Industries that "a private party could seek contribution from other liable parties [under § 113(f)(1)] only after having been sued under § 106 or § 107(a)").

Here, Defendants argue that Plaintiffs did not plead that the Consent Decree was during or following any litigation and that neither Plaintiff was sued under CERCLA § 106 or § 107(a). (Def Br. 9; Def. Reply 8.)  Defendants further note that CERCLA expressly provides for contribution after settlement, which is not the case here.  (Defs. Br. 9-10.)

According to Thermo Fisher, it can bring a contribution claim because Sandvik has a viable CERCLA § 107 claim and Thermo Fisher's claims arise out of the same contamination attributable to Defendants' property.  (Thermo Fisher Br. 8-9.)  Thermo Fisher argues that it is not necessary to be a party to a prior § 107 action to bring a contribution claim.  (Id. at 9 (citing Boarhead Farm Agreement v. Advanced Envtl. Tech. Corp., 381 F. Supp. 2d 427 (E.D. Pa. 2005)).)  Sandvik does not address a claim under CERCLA § 113(f)(1) in its opposition brief.

Based on the statutory language and relevant case law, Plaintiffs do not have a viable claim under § 113(f)(1) because they have not been sued under § 106 or § 107.  The Supreme Court has unambiguously held that a party may only seek contribution from other liable parties under § 113(f)(1) after having been sued under § 106 or § 107.  See Cooper Indus., Inc., 543 U.S. at 160-61; Atl. Research Corp., 551 U.S. at 128.  It is undisputed that neither Plaintiff has been sued under § 106 or § 107.  Therefore, Plaintiffs' claims under § 113(f)(1) are dismissed.

### III.   CERCLA § 113(f)(3)(B)

Under § CERCLA 113(f)(3)(B),

> [a] person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement.

42 U.S.C. § 9613(f)(3)(B).  The statute contains a provision for the statute of limitations for a contribution action under § 113(g)(3).  Id. at § 9613(g)(3).  An action for contribution for response costs or damages under § 113(f)(3)(B) must be commenced within three years of the

9

date of a cost recovery settlement.  Id. at § 9613(g)(3)(B); Cooper Indus., Inc., 543 U.S. at 167 ("Section 113(g)(3) then provides two corresponding 3-year limitations periods for contribution actions, one beginning at the date of judgment, § 113(g)(3)(A), and one beginning at the date of settlement, § 113(g)(3)(B).").

Here, Defendants argue that Plaintiffs' claim under § 113(f)(3)(B) is time-barred.  (Defs. Br. 11-12.)  Defendants contend that the three-year statute of limitations for this claim began to accrue at the time the Consent Order became effective.  (Id.)  Plaintiffs signed the Consent Order in late 2007, but Plaintiffs allege that it was entered on March 25, 2008.  (Id. at 11.)  Even accepting the later date, Defendants argue that the statute of limitations expired on March 25, 2011.  (Id. at 11-12.)  Defendants note that the parties entered into a tolling agreement which became effective on August 1, 2011—four months after Plaintiffs' limitations period for a § 113(f)(1)(B) claim ended.  (Id. at 12.)

Thermo Fisher argues that the Consent Order is not a cost recovery settlement and is not subject to § 113(g)(3)(B)'s three-year statute of limitations.  (Thermo Fisher Br. 10.)  Instead, Thermo Fisher notes that courts classify agreements such as the Consent Order as either "removal actions" where the three-year statute of limitations which runs from the "completion of the removal action" or "remedial actions" where the six-year statute of limitations runs from the "initiation of physical on-site construction of the remedial action."  (Id. at 12-15 (internal citations omitted).)  Under either standard, Thermo Fisher argues that the statute of limitations has not yet been triggered.  (Id. at 15.)  To the extent the three-year statute of limitations under § 113(g)(3)(B) does apply, Thermo Fisher contends that the discovery rule tolls the limitations period until August 15, 2008 when Thermo Fisher learned of Defendants' PRP status.  (Id. at 16.)

On the other hand, Sandvik agrees that the three-year statute of limitations articulated in § 113(g)(3)(B) applies. (Sandvik Br. 12.) However, Sandvik argues that its contribution claim was brought within three years of discovering Defendants' release of hazardous substances when taking into consideration the parties' tolling agreement. (Id.) Like Thermo Fisher, Sandvik maintains that the discovery rule applies in contribution actions, and in the instant matter, it did not learn of Defendants' releases until August 15, 2008. (Id. at 14.) Based on the date of discovery—August 15, 2008—and the tolling agreement which was effective from August 1, 2011 to August 1, 2013, Plaintiffs' filing of its Complaint on August 2, 2013 was within the statute of limitations set forth in § 113(g)(3)(B). (Id. at 15.)

As a preliminary matter, this Court notes that the Complaint specifically indicates that "[t]he Consent Order constitutes an administrative settlement for purposes of CERCLA § 113(f)(3)(B)." (Compl. ¶ 19.) Thermo Fisher's argument that the Consent Order is not an administrative settlement for purposes of statute of limitations directly contradicts the Complaint. Furthermore, the Consent Order itself identifies the document to be an administrative settlement. (See Compl. Ex. A.) Accordingly, this Court finds that the Consent Order is an administrative settlement and is subject to the three-year statute of limitations period for contribution actions set forth in § 113(g)(3)(B).

Plaintiffs entered the Consent Agreement on March 25, 2008, entered a tolling agreement effective from August 1, 2011 to August 1, 2013, and filed the instant action on August 2, 2013. Having established that the three-year statute of limitations period applies, the issue for this Court to determine is whether the discovery rule applies here to delay the accrual of the limitations period from March 25, 2008 until August 15, 2008. "[T]he discovery rule functions to delay the initial running of the statutory limitations period, but only until the plaintiff has

discovered or, by exercising reasonable diligence, should have discovered (1) that he or she has been injured, and (2) that this injury has been caused by another party's conduct." New Castle Cnty. v. Halliburton NUS Corp., 111 F.3d 1116, 1124 (3d Cir. 1997) (citing Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1386 (3d Cir. 1994)). Additionally, "the discovery rule does not delay the accrual of a cause of action until the plaintiff has identified every party who may be liable on its claim." Id. at 1125.

Here, this Court finds that the discovery rule does not render Plaintiffs' § 113(f)(3)(B) claim timely. As early as 1978, Fair Lawn was identified as an area with contaminated non-potable industrial wells. On September 8, 1983, Westmoreland Well Field was placed on the National Priorities List. Since approximately 1986, Plaintiffs conducted and implemented remedial measures at their facilities. By March 25, 2008, when the Consent Order became effective, Plaintiffs could have known, or should have known—through reasonable diligence—that other individuals or entities may have been responsible sources for the contamination. The fact that Plaintiffs did not become aware of Defendants' status as PRPs until Defendants conducted sampling and provided this information to Plaintiffs on August 15, 2008 is of no relevance. Plaintiffs could have identified Defendants as responsible parties of the contamination through reasonable due diligence. As the Third Circuit held in New Castle, "the discovery rule does not delay the accrual of a cause of action until the plaintiff has identified every party who may be liable on its claim." 111 F.3d at 1125. In concluding that the discovery rule does not toll the statute of limitations on Plaintiffs' § 113(f)(3)(B) claim, this Court finds that the limitations period began to run on March 25, 2008—the effective date of the Consent Order—and ended on March 25, 2011. Neither the tolling agreement nor the discovery rule salvages Plaintiffs' claims.

## IV. Declaratory Relief Under CERCLA

Plaintiffs request declaratory relief under CERCLA § 113(g)(2) and 28 U.S.C. §§ 2201 and 2202 (the "Declaratory Judgment Act"). (Compl. ¶¶ 57-59.) CERCLA § 113(g)(2) provides that "in any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages." 42 U.S.C. § 9613(g)(2). Under the Declaratory Judgment Act, courts may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

As Plaintiffs' claims under § 113 and Thermo Fisher's § 107(a) claim are dismissed, the request for declaratory judgment is denied as moot with respect to these claims. As Sandvik has a viable claim under §107(a), Sandvik's claim for declaratory judgment with respect this claim survives the instant motion to dismiss.

## V. Cost Recovery Under the Spill Act

Count IV of the Complaint asserts a claim for cost recovery under the Spill Act. (Compl. ¶¶ 61-66.) Sandvik agreed to dismiss this claim. (Sandvik Br. 4 n.1.) Thermo Fisher's opposition brief is silent as to Count IV.

It is well-settled that "[t]he Spill Act does not provide a private right of action for recovery of cleanup costs and other damages." Allied Corp. v. Frola, 701 F. Supp. 1084, 1091 (D.N.J. 1988). Therefore, Thermo Fisher has no viable claim for cost recovery under the Spill Act; thus, this claim is dismissed.

## VI. Contribution Under the Spill Act

The Spill Act provides, in pertinent part:

> dischargers or persons [who] clean[] up and remove[] a discharge of a hazardous substance . . . shall have a right of contribution against all other dischargers and persons in any way responsible for a discharged hazardous substance or other persons who are liable for the cost of the cleanup and removal of that discharge of a hazardous substance.

N.J. Stat. Ann. § 58:10-23.11f(2)(a). The statute does not provide a statute of limitations provision for contribution actions. Where a statute is silent as to the statute of limitations for a cause of action, courts are "directed to select a limitations period from among those periods applicable to actions seeking similar relief at common law." Reichhold, Inc. v. U.S. Metals Ref. Co., 655 F. Supp. 2d 400, 446 (D.N.J. 2009). As both parties note, with respect to claims under the Spill Act, state and federal courts have relied on N.J. Stat. Ann. 2A:14-1 which provides a six-year statute of limitations period for trespass to real property and tortious injury to real property. N.J. Stat. Ann. 2A:14-1; Reichhold, Inc., 655 F. Supp. 2d at 446; Morristown Associates v. Grant Oil Co., 432 N.J. Super. 287, 299 (App. Div. 2013) (finding that "a six-year statute of limitations applies to plaintiff's Spill Act [claim]"). Thus, this Court will apply a six-year statute of limitations for Plaintiffs' contribution claim under the Spill Act.

A Spill Act contribution claim accrues only after the cleanup and removal of hazardous substances has commenced. See Am. Premier Underwriters Inc. v. Gen. Elec. Co., 866 F. Supp. 2d 883, 911 (S.D. Ohio 2012) (interpreting New Jersey law and stating that "a cause of action under section 23.11f(a)(2) can accrue only when a plaintiff has engaged in cleanup and removal of a discharge of a hazardous substance"); Bowen Eng'g v. Estate of Reeve, 799 F. Supp. 467, 480 (D.N.J. 1992) aff'd, 19 F.3d 642 (3d Cir. 1994) (finding "investigation into the extent of contamination" did not trigger the statute of limitations on a Spill Act claim).

Here, Defendants argue that "Plaintiffs' Spill Act claims for contribution began to accrue in 1986, when the Borough's air stripper system that Plaintiffs paid for began operating." (Defs.

Br. 20.) Defendants further note that "New Jersey law does not require that the plaintiff know the identity of the responsible party for the limitations period to begin to run." (Defs. Br. 19 (citing SC Holdings, Inc. v. A.A.A. Realty Co., 935 F. Supp. 1354, 1367 (D.N.J. 1996) (citing Apgar v. Lederle Laboratories, 123 N.J. 450, 456, 588 A.2d 380 (1991)).) Accordingly, Defendants assert that Plaintiffs could have filed a "John Doe" Complaint even without knowing the identities of the potential wrongdoers. (Defs. Br. 20-21.)

Sandvik argues that "Plaintiffs did not determine that a release had occurred from Defendants' facility until August 15, 2008, when they were provided sampling results from counsel for Defendants." (Sandvik Br. 20.) Because Plaintiffs have no knowledge as to when the release actually occurred, Sandvik contends that the release of contaminants at Defendants' property may have been shortly before it was discovered in 2008. (Id.)

The main issue for this Court to consider is when the statute of limitations on Plaintiffs' Spill Act contribution claim began to accrue. Under the statute, a claim begins to accrue when the actual removal and cleanup of hazardous substances commences. Defendants correctly note that the cleanup and removal of hazardous substances began in 1986 when the air stripper system was operational. Additionally, Plaintiffs could have filed a John Doe Complaint before any responsible parties were identified. However, there is no indication that Plaintiffs reasonably knew or should have known that other entities had contributed to the contamination. At this stage, the record is not sufficiently developed for this Court to making a ruling regarding the statute of limitations on Plaintiffs' Spill Act contribution claim. Accordingly, Defendants' motion to dismiss is denied with respect to this claim.

**CONCLUSION**

For the reasons set forth above, Defendants' Motion is **GRANTED**, **in part**, with respect to Thermo Fisher's CERCLA § 107(a) claim, Plaintiffs' CERCLA § 113(f)(1) claims, Plaintiffs' CERCLA § 113(f)(3)(B) claims, and Plaintiffs' cost recovery claims under the Spill Act. Further, Defendants' Motion is **DENIED**, **in part**, with respect to Sandvik's CERCLA § 107(a) claim, Sandvik's request for declaratory judgment relating to its CERCLA § 107(a) claim, and Plaintiffs' contribution claim under the Spill Act.

s/Susan D. Wigenton, U.S.D.J.

cc: Madeline Cox Arleo, U.S.M.J.